UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:06-CV-659-R

JARRETT HAMILTON                                                                                          PLAINTIFF

v.

GENERAL ELECTRIC COMPANY                                                                   DEFENDANT

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant's Motion for Summary Judgment (Docket #14). Plaintiff has responded (Docket #17). Defendant has replied (Docket # 22). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED.

**BACKGROUND**

Plaintiff Jarrett Hamilton worked for Defendant General Electric ("GE") at Appliance Park in the early 1970's until August 12, 2005. Plaintiff worked in a variety of positions, but at the time of the termination of his employment he was working as a replacement operator. Hamilton was a member of Local 761 of the Industrial Division of the Communications Workers of America, AFL-CIO, CLC ("Union").

Both parties agree that, although Plaintiff had some disciplinary history over the course of his three decades of employment, the primary facts at issue in this case occurred during 2004 and 2005. Defendant claims that in 2004 GE management personnel began to have difficulty locating Plaintiff during Plaintiff's shift. The suspicion that Plaintiff was leaving his work area without permission led Frank Whitehouse, Manager Plant Relations, to wait by the gate in an

attempt to find Plaintiff.  Defendant's records indicate that on June 18, 2004, Plaintiff clocked out for over an hour for his half hour lunch break.  Whitehouse questioned Plaintiff concerning where he had been, and Plaintiff responded that he was on his half hour lunch break.  Defendant determined that the failure to account for the additional thirty minutes was a violation of the rules of conduct which forbids leaving the premises without permission.  As a result, Plaintiff was placed on a thirty day unpaid suspension.

Plaintiff returned to work on July 24, 2004.  Plaintiff arrived that day, and complained to his supervisor concerning medical restrictions that Plaintiff had that prevented him from going on certain jobs.  According to Plaintiff, his supervisor, without further provocation, began yelling at Plaintiff and started to call the guards to remove Plaintiff from the building.  After this incident, Defendant terminated Plaintiff's employment for insubordination.

Plaintiff filed a grievance concerning his termination, and the Union intervened on his behalf.  The Union requested that Defendant reconsider Plaintiff's termination.  Defendant did reconsider, and agreed to reinstate Plaintiff's employment under certain terms and conditions.  These conditions were written into a Last Chance Agreement ("LCA").

On May 5, 2005, Plaintiff received another thirty day unpaid suspension.  The parties disagree about what occurred that day.  Plaintiff was not scheduled to work that day, but he volunteered to work anyway.  After Plaintiff came into work, one of his supervisors, Terry Bale, told Plaintiff he would be working on an assembly line in the Stainless Steel Area.  Bale also told Plaintiff to take his lunch break early, so he would be available to work from 11:20 a.m. to 2:00 p.m.

According to Hamilton, he was promised that if he agreed to work on his day off, he

would not have to work on an assembly line. Additionally, Plaintiff believed he was not required to take his lunch break early. Plaintiff claims he was going to work on the assembly line anyway, after putting away the tools he was using. Plaintiff also states he wanted to talk to a union steward, but was not given the opportunity.

According to Defendant, Plaintiff was told he could work anywhere in building AP2 if he came into work that day. Defendants also claim that Plaintiff refused to work in the Stainless Steel Area, or to take his lunch break at the instructed time.

Plaintiff's supervisor then called the guards to have Plaintiff removed from the premises. Defendant claims that GE made the preliminary decision to terminate Plaintiff's employment, but that after the Union intervened GE agreed to place Plaintiff on another thirty day unpaid suspension.

While serving the suspension, Plaintiff filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC complaint was filed on May 20, 2005. Defendant's Human Resources Department received notice of the Plaintiff's charge of age discrimination on May 24, 2005. Additionally, Plaintiff claims that he overheard his supervisors discussing the EEOC charge shortly after Plaintiff filed it.

Plaintiff resumed working for Defendant on June 6, 2005. According to Plaintiff, although he had received light to moderate harassment, surveillance, and micro-management from his supervisors since August, 2004, the situation became worse after he filed the charge with the EEOC.

On July 28, 2005, Plaintiff met with Don Blair, Plaintiff's immediate supervisor, and Union Steward Billy Humes. Plaintiff, Blair, and Humes discussed Defendant's concerns about

Plaintiff's failure to follow work instructions, Plaintiff's tardiness at the start of his shift or returning from breaks, and Plaintiff's failure to stay in his work area. The meeting also discussed the need for Plaintiff to follow set break times and follow the rules of conduct.

On August 9, 2005, Plaintiff was spray painting doors when his supervisor told him to switch jobs with another worker, and work on the assembly line. Plaintiff was working on the assembly line when the line broke down. Plaintiff then told his co-worker that he was going to get some lunch.

The parties disagree about what occurred next. Plaintiff claims that his supervisor came into the lunch room and told him to get back to work and move some skids. As Plaintiff was putting up his lunch, his supervisor returned a few seconds later with another GE employee and sent Plaintiff home. Defendant claims that Plaintiff's supervisor asked Plaintiff to move the skids, but that a few minutes later Plaintiff was still in the lunchroom preparing his food.

The parties also disagree about Plaintiff's behavior while being escorted out of the building. Defendant claims that Plaintiff became disruptive, used foul language, threatened to sue, and threw his name badge on the ground. Plaintiff denies any of this occurring.

On August 15, 2005, Plaintiff received a letter notifying him that his employment was terminated, effective August 12, 2005. The letter stated that Plaintiff was terminated for repeatedly engaging unacceptable conduct in the workplace and failing to abide by the Appliance Park rules of conduct. The letter specifically stated that Plaintiff had refused work direction from his supervisor, used foul and abusive language, and handled himself in a deceptive manner while Defendant attempted to work with Plaintiff in a constructive fashion.

Plaintiff filed suit under the Kentucky Civil Rights Act, alleging that Defendant

unlawfully retaliated against him for filing a complaint of age discrimination with the EEOC. Defendant has filed a motion for summary judgment, arguing that Plaintiff waived this cause of action in the LCA. Defendant also argues that Plaintiff has failed to establish his prima facie case, and Defendant is entitled to judgment as matter of law.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys.*

*Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## ANALYSIS

**I. Waiver**

Defendant first argues that Plaintiff waived his right to pursue this action when he signed the LCA. The LCA states that "if Mr. Hamilton is discharged as a result of the Company's determination that he has violated this Agreement, it is agreed that any grievance filed protesting the discharge not be subject to arbitration and that no legal action respecting said discharge will be filed." Defendant argues that the LCA was a bargained for exchange, with Defendant reinstating Plaintiff's employment, in exchange for Plaintiff waiving his right to proceed in court.

"It is the general rule in this circuit that an employee may not prospectively waive his or her rights under either Title VII or the ADEA." *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 584 (6th Cir. 1995). "An employer cannot purchase a license to discriminate. An employment agreement that attempts to settle prospective claims of discrimination for job applicants or current employees may violate public policy." *Id.* at 585.

One exception to this general rule is that a waiver may be effective to preclude claims involving a "continuing effect" of past discrimination. *Id.* at 584-85. *See also Kellog Co. v. Sabhlok*, 471 F.3d 629, 635 (6th Cir. 2006). Another exception to the general rule permits employees to waive their right to proceed with a Title VII suit in court, if the employee did so in a valid arbitration agreement. *McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004).

Although prospective waiver of an employee's rights when an employee enters an arbitration agreement is not forbidden, there are still limits to the conditions employers may put

6

in those agreements.

> [E]mployers should not be permitted to draft arbitration agreements that deter a substantial number of potential litigants from seeking any forum for the vindication of their rights.  To allow this would fatally undermine the federal anti-discrimination statutes, as it would enable employers to evade the requirements of federal law altogether."

*Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 658 (6th Cir. 20003) (en banc).  If an employer cannot draft an agreement that discourages employees from seeking any forum in which to vindicate their rights under Title VII, it is also true that an employer cannot draft an agreement that explicitly prevents a potential litigant from using any forum to vindicate those same rights.

Plaintiff is alleging that he was fired in retaliation for making an EEOC complaint.  The waiver provision is being used by Defendant in an attempt to foreclose all potential forums Plaintiff could use to vindicate his right to be free from unlawful discrimination. This is forbidden by both Sixth Circuit precedent and the policy underlying the federal anti-discrimination statutes.   Therefore, the LCA waiver provision is not a waiver of Plaintiff's Title VII rights.

However, Plaintiff did not file an action under Title VII.  Instead, Plaintiff filed suit alleging a violation of the Kentucky Civil Rights Act ("KCRA").  The question before the Court is whether Kentucky law allows an employee to prospectively waive his rights to file suit under the KCRA.

Defendant cites *Frear v. P.T.A. Industries, Inc.,* 103 S.W.3d 99 (Ky. 2003) and *American General Life & Accident Ins. Co. v. Hall*, 74 S.W.3d 688 (Ky. 2002) as holding that statutory claims under the KRCA are subject to waiver.  However, the cases cited by Defendant involve a

7

Plaintiff waiving his statutory claim after the alleged violation had occurred.  As this case involves a prospective waiver of an employee's statutory rights, the analysis is quite different.  In addition, it is important that in this case the LCA waiver also waives the alternative forum of arbitration.

It is clear from the cases that have interpreted Title VII that, while an employee may waive his right to the judicial forum in vindicating his statutory rights, it is important that the employee have some forum.  "[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function."  *Gilmer . Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (alterations in original).

"The language of the KCRA generally tracks the language of Title VII and, thus, "should be interpreted consonant with federal interpretation."  *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 793 (6th Cir. 2000)  Additionally, the statutory language of the KCRA shows that the same policy goals underlie Title VII and the KCRA.  The purpose of the KCRA is "[t]o provide for execution within the state of the policies embodied in the Federal Civil Rights Act of 1964."  KRS § 344.020(1)(a).  As shown above, the United States Supreme Court and the Sixth Circuit have held that the policies behind Title VII prevent employers from conditioning someone's employment on the prospective waiver of that employee's right to a neutral forum for employment discrimination claims.

Employers are free to negotiate a release of outstanding Title VII claims, just as litigants are always free to enter a settlement.   Employers are also free to negotiate a waiver of the use of federal courts as a forum to seek redress of prospective Title VII claims, so long as the waiver is

combined with a valid arbitration agreement. However, an employer may not condition employment on an employee's waiver of any legal claim under the employment agreement. An employee must have some forum to seek redress for discrimination by his employer.

Under the LCA, if Defendant makes the determination that Plaintiff violated the LCA, Plaintiff loses all rights to challenge the termination of his employment, even if the termination was unlawful. An employee's statutory right under the anti-discrimination statutes cannot be dependant on the employer's good faith in determining if the employee violated company policy. Given the remedial and deterrent functions of both Title VII and the KCRA, the Court to finds that Kentucky law does not allow an employment agreement to waive access to a neutral forum to hear an employee's statutory employment discrimination claims that arise after the agreement is in effect. Therefore, the waiver provision of the LCA does not prevent Plaintiff from bringing this cause of action.

## II.  Plaintiff's prima facie case

A retaliation claim under the KCRA is subject to the same analysis as a Title VII retaliation claim. *Ford v. General Motors Corp.,* 305 F.3d 545, 553 n.3 (6th Cir. 2002). A prima facie case of Title VII retaliation requires Plaintiff to prove that: "(1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Id.* at 552-53  If Plaintiff establishes a prima facie case, Defendant must "articulate some legitimate, nondiscriminatory reason for its actions." *Id.*  Plaintiff then bears the burden to "demonstrate that the defendant's proffered reason was false." *Id.*

The parties agree that Plaintiff suffered an adverse employment action when his employment was terminated. Defendant argues that Plaintiff failed to establish the other three elements of his prima facie case.

Defendant first states that Plaintiff did not engage in an activity protected by the KCRA. To make this argument, Defendant states that an EEOC complaint is not an investigation, proceeding, or hearing under the KCRA, but is a federal complaint. Therefore, according to Defendant, Plaintiff must bring a retaliation action under Title VII, not the KCRA.

The KCRA makes it unlawful for employers to retaliate against a person "because he has opposed a practice declared unlawful by this chapter." KRS § 344.280(1). Plaintiff states that the protected activity he engaged in was the filing of the EEOC complaint alleging age discrimination. The KCRA forbids discrimination on the basis of age. KRS § 344.040. The filing of an EEOC complaint is an act opposing the alleged discrimination. Plaintiff engaged in conduct protected by the KCRA.

Defendant also states that Plaintiff's supervisors did not have knowledge of Plaintiff's EEOC complaint until after his employment was terminated. Defendant's human resources department received a letter informing them of Plaintiff's claim before Plaintiff was terminated. Plaintiff also claims that he overheard his supervisors discussing his EEOC complaint shortly after it was made. Given this evidence, a reasonable jury could find that Plaintiff's supervisors had knowledge of the complaint.

The final element of Plaintiff's prima facie case that Defendant attacks is the causation requirement. Defendant argues that there is no evidence of a causal connection between Plaintiff's EEOC complaint and the termination of Plaintiff's employment.

To establish the causation element Plaintiff must offer evidence "sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). Plaintiff's evidence of causation begins with the temporal proximity between the EEOC complaint and the termination. Plaintiff filed his EEOC complaint on May 24, 2005. Plaintiff was terminated August 12, 2005. The passage of only two and a half months is some evidence that the complaint and termination are connected.

Under Sixth Circuit precedent, however, temporal proximity is not enough to satisfy the causation element of Plaintiff's prima facie case. *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 718 (6th Cir. 2007). In support his claim of a causal connection between the EEOC complaint and the termination, Plaintiff also alleges that his supervisors demonstrated a pattern of heightened antagonism toward him after the supervisors became aware of his complaint.

Plaintiff first states that his supervisors would often hide behind objects in an effort to watch him. However, Plaintiff was under the observation of his supervisors long before he filed his EEOC complaint. Plaintiff's first thirty day suspension was the result of a human resources manager posting himself outside of the gate waiting for Plaintiff to return from his break. Plaintiff was told by his supervisors that the LCA required him to work first shift because that was the best shift for the supervisors to keep an eye on him.

Plaintiff also gives specific instances of what he believed to be harassment from his supervisors, such as his supervisor threatening to fire Plaintiff when he did not turn on an assembly line on time when the line was actually disabled. Plaintiff also states that he was upbraided by his supervisor for taking a break when his co-workers had taken an extra ten minutes on their breaks, and that Plaintiff was often assigned make-work to keep him busy.

Plaintiff had a significant disciplinary record before he filed his EEOC complaint. His employment had already been terminated once, and he had received two thirty-day suspensions in the year preceding his EEOC complaint. Defendant also claims that in the case of the second suspension, Defendant had made the preliminary decision to terminate Plaintiff's employment. It was only when the Union intervened again that Defendant decided to give Plaintiff another opportunity. Finally, on July 28, 2005, Plaintiff received a documented counseling session due to, among other things, Plaintiff's failure to stay in his work area. The counseling, combined with LCA's warning that Plaintiff would be discharged if he violated the GE's rules of conduct, put Plaintiff on notice that he was in danger of losing his job if he failed to stay in his work area.

Given Plaintiff's disciplinary history, the passage of two and a half months between the EEOC complaint and the termination, combined with heightened management observation and direction, is insufficient to allow a reasonable jury to find that the EEOC complaint was the likely cause of Plaintiff's termination. Therefore, Plaintiff cannot establish his prima facie case, and Defendant is entitled to judgment as a matter of law.

**III. Pretext**

Even if Plaintiff could establish a prima facie case, "the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Morris v. Oldham Coutry Fiscal Court,* 201 F.3d 748, 792 (6th Cir. 2000) (citing *McDonnell Dougals Corp. v. Green,* 411 U.S. 792, 802 (1973)). Defendant states that Plaintiff's termination was the result of a years worth of unacceptable conduct, culminating in the events of August 9, 2005. The burden is then on Plaintiff to produce evidence that a reasonable jury could use to find that Defendant's reason was a pretext for Defendant's unlawful retaliation.

12

Plaintiff denies continuing to make his lunch after his supervisor ordered him to return to work, stating that his supervisor did not even give him time to put away his lunch. Plaintiff also denies using abusive language while he was being escorted from the building. Refusing specific work directions and using foul and abusive language were two of the reasons listed on the letter Plaintiff received on August 15, 2005, which notified him that his employment was terminated.

The letter also states that despite repeated warnings, Plaintiff failed to follow Defendant's rules of conduct. Defendant argues that the evidence clearly shows that Hamilton took a lunch break other than his set lunch break, and that doing so violated the rules of conduct. This conforms with the letter of August 15, 2005, which stated that Plaintiff's employment was being terminated under the LCA for Plaintiff's failure to abide by the rules of conduct, and Plaintiff's engaging in unacceptable practices on more the one occasion.

However, even if Defendant has articulated an undisputed violation of the rules of conduct, summary judgment would be inappropriate if Plaintiff could offer evidence that would allow a reasonable jury to find that the violation of the rules of conduct was used as a pretext for Defendant's unlawful retaliation. An example of this would be if an employer "waits for a legal, legitimate reason to fortuitously materialize, and then uses it to cover up his true, longstanding motivations for firing the employee." *Jones v. Potter*, 488 F.3d 397, 408 (6th Cir. 2007).

The evidence before the Court shows that the termination of Plaintiff's employment was the culmination of a Plaintiff's disciplinary issues over the past year. The Last Chance Agreement put Plaintiff on notice that his employment would be terminated if he violated any of Defendant's rules of conduct. Plaintiff was given numerous opportunities to continue his employment with Defendant. Therefore, for the same reasons that a reasonable jury could not

find a causal connection between the EEOC complaint and the termination of Plaintiff's employment, a reasonable jury could not find that the reason Defendant has given for the termination of Plaintiff's employment was a pretext to hide any unlawful retaliation.

## CONCLUSION

For the above reasons, Defendant's Motion for Summary Judgment is GRANTED.

An appropriate order shall issue.