# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CASE NO. 3:06-CV-659

JARRETT HAMILTON                                                                                    PLAINTIFF

v.

GENERAL ELECTRIC COMPANY                                                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendant's Renewed Motion for Summary Judgment (Docket #67). Plaintiff, *pro se*, has responded (Docket #71). Defendant has replied (Docket #72). Plaintiff has filed a sur-reply (Docket #74). This matter is now ripe for adjudication. For the following reasons, Defendant's motion is DENIED.

## BACKGROUND

This case was remanded to this Court by the Sixth Circuit Court of Appeals, which reversed this Court's prior Memorandum Opinion granting summary judgment in favor of Defendant (DN 40). The facts of this case are as follows:

Plaintiff Jarrett Hamilton worked for Defendant General Electric ("GE") at Appliance Park in Louisville, Kentucky, from 1974 until August 12, 2005. Hamilton worked in a variety of positions, but at the time of the termination of his employment he was working as a replacement operator. Hamilton was a member of Local 761 of the Industrial Division of the Communications Workers of America, AFL-CIO, CLC ("Union").

The primary facts at issue in this case occurred during 2004 and 2005. Viewing the evidence in a light most favorable to Hamilton, the Sixth Circuit summarized the events leading up to Hamilton's lawsuit:

On June 18, 2004, Frank Whitehouse ("Whitehouse"), Manager of Plant Relations

for GE, waited by the front gate of the plant looking for Hamilton. Whitehouse asserts that he was waiting for Hamilton because, recently, GE managers had been unable to locate Hamilton when he was supposed to be working. Hamilton asserts that Whitehouse's decision to wait for Hamilton was "the beginning of Whitehouse's campaign to 'get' Jarrett Hamilton." When Hamilton appeared at the gate, Whitehouse confronted him and asked him to explain his absence. Hamilton stated that he had been on his 30-minute lunch break. However, after examining Hamilton's time card, Whitehouse determined that Hamilton had been gone for more than 30 minutes, and, as a result of this violation of GE policy, GE suspended Hamilton for a month.

When Hamilton returned to work on July 24, 2004, another incident arose. Hamilton asserts that when he got to work, he asked his supervisor to honor his medical restrictions. Hamilton states that when he did this, his supervisor suddenly started yelling at him and called for the guards to remove Hamilton. Hamilton says that he left the building rather than be removed by the guards and that later, when he sought help at the union hall, he learned that GE had terminated him. GE alleges that Hamilton was terminated in July 2004 because he was insubordinate and refused to follow the direction of his supervisor.

After this termination, the union intervened, and Hamilton, GE, and the union signed a Last Chance Agreement ("LCA") on August 17, 2004. This LCA gave Hamilton his job back in exchange for his agreement that he would comply with all of GE's rules and that if he violated any, he would be subject to immediate termination. Hamilton also agreed that if, in the future, GE terminated him for violating the LCA, "any grievance filed protesting the discharge [will] not be subject to arbitration and that no legal action respecting said discharge will be filed." The LCA was to be in effect for two years.

For almost a year following the LCA, Hamilton continued to work for GE without incident. On May 6, 2005, Hamilton voluntarily came in to work on Kentucky Oaks Day, an informal holiday for many GE workers. Hamilton asserts that he volunteered to work only because he was told that he would be sanding doors and would not be required to work on the line. GE asserts that Hamilton knew that he could be assigned to work anywhere within one of its plant buildings that day. During the work day, a supervisor told Hamilton to take his lunch early and then to go work on the line. From this point on, Hamilton's and GE's accounts of the incident differ. Hamilton states that because he felt that he was not required to comply with either of these orders, he asked to see a union steward. Hamilton explains that his supervisor then started yelling at him, so he went to the line and began to work. Hamilton asserts that while he was working on the line, his supervisor called the guards and had them escort Hamilton out of the building.

The supervisor involved in the incident, Terry Bale ("Bale"), explains that after

> he told Hamilton to work on the line, Hamilton asked for a union representative. Bale states that he offered to go find a union representative but that he ordered Hamilton to work on the line in the interim. According to Bale, Hamilton continued to refuse to work and walked away from Bale, so Bale called the guards and had Hamilton removed from the plant. When Hamilton returned to work the next Monday he learned that he had been terminated. The Union intervened again, and Hamilton was reinstated but give a 30-day suspension. On May 20, 2005, while serving this suspension, Hamilton filed an age-discrimination charge against GE with the EEOC.
>
> Hamilton testified that when he returned to GE in June of 2005, after filing his EEOC complaint, his supervisors greatly intensified their scrutiny of his work and harassed him more than they ever had before. In the months between Hamilton's return and his final termination, the relationship between GE and Hamilton continued to be strained. On July 28, 2005, Hamilton and his union representative met with Donald Blair ("Blair") to discuss what GE considered to be ongoing deficiencies in Hamilton's job performance. GE conceives of this meeting as having provided Hamilton with "a reprieve from the LCA." Hamilton insists that during this time, GE was scrutinizing his behavior in an effort to create reasons to discipline him. During this period, Hamilton overheard Bale and another supervisor discussing and making light of Hamilton's EEOC complaint.
>
> The final event that led to this lawsuit occurred on August 9, 2005, when the line that Hamilton was working on broke down, leaving Hamilton with no work. The parties agree that when this happened, Hamilton went to the lunchroom to eat his lunch. The events that followed are highly contested. According to Hamilton, after he had put his food in the microwave, Blair told him to move some skids. Hamilton says that he agreed to do the work, but that seconds later, while he was still putting his food away, Blair and Bale came back into the lunchroom and told him to gather his belongings and leave the plant immediately. Hamilton asserts that he left the plant quietly and without swearing or throwing things. According to Bale and Blair, after the assembly line broke down, they found Hamilton in the lunchroom and asked him to move the skids. Bale and Blair found Hamilton there, continuing to prepare his food. Both Bale and Blair state that after Bale suspended Hamilton and as they were escorting him out of the plant, Hamilton swore at them and threw his badge down rather than handing it to either man.

*Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 430-33 (6th Cir. 2009) (citations to the record and footnotes omitted). On August 15, 2005, Hamilton received a letter notifying him that his employment was terminated, effective August 12, 2005. The letter stated that Hamilton was

3

terminated for repeatedly engaging in unacceptable conduct in the workplace and failing to abide by the Appliance Park rules of conduct. The letter specifically stated that Plaintiff had refused work direction from his supervisor, used foul and abrasive language, and handled himself in a deceptive manner while Defendant attempted to work with Plaintiff in a constructive fashion.

Hamilton filed suit in state court on December 14, 2006, alleging that GE unlawfully retaliated against him in violation of the Kentucky Civil Rights Act, Ky. Rev. Stat. Ann. § 344.280(1) ("KCRA"), for filing an age-discrimination complaint with the EEOC. GE removed the case to this Court on December 26, 2006. GE then moved for summary judgment on September 17, 2007. The Court granted this motion on November 29, 2007. The Sixth Circuit reversed the Court's opinion on February 12, 2009, and remanded the case to this Court for further proceedings. GE filed its renewed motion for summary judgment on October 15, 2010. The Court now considers this motion in light of the Sixth Circuit's ruling.

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a

mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

A retaliation claim under the KCRA is subject to the same analysis as a Title VII retaliation claim. *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 553 n. 3 (6th Cir. 2002). A prima facie case of retaliation requires Plaintiff to prove that: "(1) he or she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). If Plaintiff establishes a prima facie case, Defendant must "articulate some legitimate, nondiscriminatory reason for its actions." *Ford*, 305 F.3d at 553. Plaintiff then bears the burden to "demonstrate that the defendant's proffered reason was false." *Id.*

In the Court's prior Memorandum Opinion, the Court held that Plaintiff failed to satisfy the fourth requirement of a causal connection. Mem. Op., Nov. 29, 2007, DN 40, p. 12. The Court also held that, even if Plaintiff had made out a prima facie case, Plaintiff could not establish pretext. *Id.* at 13-14. Accordingly, summary judgment was granted in favor of

5

Defendant. *Id.* at 14. The Sixth Circuit reversed this Court's judgment on February 12, 2009, and remanded the matter to this Court "for further proceedings consistent with this opinion." *Hamilton*, 556 F.3d at 438. The Sixth Circuit held that Plaintiff had presented sufficient evidence to establish a prima facie case and make a sufficient showing of pretext such that summary judgment was not proper. *Id.* at 435-436.

Defendant's renewed motion for summary judgment asks this Court to find that Plaintiff cannot establish a prima facie case of retaliation, or in the alternative, that Plaintiff cannot establish that Defendant's reasons for terminating his employment were pretextual. In support, Defendant presents excerpts and exhibits from Plaintiff's September 9, 2010, deposition.

## I. Prima Facie Case

The first three parts of the prima facie case are undisputed; that is, Plaintiff engaged in protected activity when he filed his EEOC complaint alleging age discrimination, Defendant was aware of this complaint, and Defendant terminated Plaintiff's employment. Thus, the fourth requirement, that "there was a causal connection between the protected activity and the adverse employment action," is the only point of contention.

In its Opinion, the Sixth Circuit held that the combination of two factual allegations was sufficient to satisfy the fourth requirement: (1) the temporal proximity between Plaintiff's filing of the EEOC complaint and his termination and (2) the heightened scrutiny of Plaintiff following the filing of his EEOC complaint. 556 F.3d at 435-36. The Sixth Circuit held that "[t]he combination of this increased scrutiny with the temporal proximity of [Hamilton's] termination occurring less than three months after his EEOC filing is sufficient to establish the causal nexus needed to establish a prima facie case." *Id.* at 435-36. Although acknowledging Defendant's

6

right to supervise its employees, the Sixth Circuit held that the *increase* in scrutiny was a critical factor in finding a causal connection. *See id.* at 436.

Defendant now presents new evidence that was not before the Sixth Circuit at the time of its decision. This new evidence consists of the September 9, 2010, deposition of Plaintiff and accompanying exhibits. Defendant asserts that this evidence establishes Plaintiff had a lengthy and checkered disciplinary history with GE in which he was terminated or nearly terminated on multiple occasions. In addition, the new evidence demonstrates that Plaintiff was already under scrutiny prior to filing his EEOC complaint.

In support of its argument that Plaintiff cannot establish a prima facie case, Defendant points to an unpublished Eastern District of Michigan case. *See Gjokaj v. Nationwide Mut. Ins. Co.*, No. 06-CV-13179, 2007 WL 2332415 (E.D. Mich. Aug. 14, 2007). In *Gjokaj*, the plaintiff was an insurance agent who sued his employer alleging he was discharged for discriminatory and retaliatory reasons because of his national origin. *Id.* at *1. The plaintiff's agency was put on a "prior approval" status after an underwriting product consultant discovered problems with some of the plaintiff's policies. *Id.* The plaintiff later complained to his supervisor about a derogatory remark made by the underwriting product consultant during a meeting. *Id.* at *2. The plaintiff alleged he received extra scrutiny after making his complaints. *Id.* In analyzing the plaintiff's claim for retaliation, the district court first noted that the plaintiff's dismissal could not be considered an adverse employment action, for reasons unimportant to the present case. *Id.* at *9. Thus, the plaintiff attempted to argue that increased scrutiny was an adverse employment action. *Id.* The district court rejected this argument, finding that the plaintiff's "prior approval" status, temporal proximity, and the lack of evidence that such review was unusual for someone in

7

the plaintiff's position presented only a weakened causal connection. *Id.*

Defendant argues that this case is similar to *Gjokaj* in that additional scrutiny, after one has already been under scrutiny, and temporal proximity are insufficient to establish a prima facie claim. The Court finds that *Gjokaj* is easily distinguishable. In *Gjokaj*, the plaintiff attempted to argue that the adverse employment action was heightened scrutiny, whereas in this case the adverse employment action is Plaintiff's termination. Additionally, this Court is bound by the Sixth Circuit's decision, which held that heightened scrutiny and temporal proximity are enough to establish a causal connection in order to survive summary judgment.

Defendant's new evidence does not refute Plaintiff's allegation of increased scrutiny. Although Plaintiff's 2010 deposition highlights a more extensive disciplinary record than noted by the Sixth Circuit, this additional history does not change the Sixth Circuit's ruling. In other words, this new evidence does not change the fact that Plaintiff has alleged heightened scrutiny after he filed his EEOC complaint. Further, although Plaintiff admits he was subject to scrutiny prior to filing the EEOC complaint, this admission also does not change the current analysis. The Sixth Circuit clearly emphasized that it was Plaintiff's allegation of an *increase* in scrutiny that establishes a prima facie case. Therefore, even though the evidence now presented details Plaintiff's extensive disciplinary history from 1978 to 2005, this evidence is not enough to prevent Plaintiff from creating a genuine issue of material fact as to a causal connection.[1]

## II.     Pretext

---

[1] Defendant also notes that Plaintiff has been convicted of perjury. Defendant argues that this conviction certainly affects Plaintiff's credibility. Credibility determinations, however, are for the jury, not the Court. *See, e.g.*, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Defendant also challenges the Sixth Circuit's ruling that Plaintiff has sufficiently alleged pretext. The Sixth Circuit held that by putting forth evidence of Defendant's heightened scrutiny of Plaintiff's work (presumably to find an opportunity to terminate his employment), and by contesting the factual basis for his termination, Plaintiff presented enough evidence to prevent the Court from granting summary judgment on the issue of pretext. *Hamilton*, 556 F.3d at 437. The Sixth Circuit specifically held that "Hamilton has contested the facts underlying his termination and has alleged a question of material fact sufficient to defeat a motion for summary judgment." *Id.* at 438. As noted in the Court's discussion of a causal connection, Defendant's new evidence does not refute Plaintiff's allegation of heightened scrutiny. In addition, Defendant does not deny that the material facts concerning the incident which led to Plaintiff's termination are still in dispute.

Instead, Defendant relies upon Sixth Circuit precedent which holds that an employer may defeat a plaintiff's claim of pretext by showing that "the employer honestly believed in the proffered reason given for its employment action." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998). The employer's belief must be "reasonably grounded on particularized facts that were before it at the time of the employment action." *Id.* "[T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.* at 807. Even if the employer makes such a showing, the employee may produce proof to the contrary. *Id.*

The Sixth Circuit has applied this "honest belief" rule in the context of Title VII retaliation cases. *See, e.g.*, *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695 (6th Cir. 2007); *Denhof v. City of Grand Rapids*, 494 F.3d 534, 542-43 (6th Cir. 2007). The rule only applies,

9

however, where a plaintiff demonstrates pretext "by showing that the reason given by the employer 'is ultimately found to be mistaken, foolish, trivial, or baseless.'" *Clay*, 501 F.3d at 714 (quoting *Smith*, 155 F.3d at 806). The "honest belief" rule then provides the defendant with a last opportunity to demonstrate that the adverse employment action was not taken with discriminatory intent. *Id.* at 714-15.

This is not a case in which the "honest belief" rule applies. Plaintiff has not alleged that Defendant's decision was, in hindsight, mistaken, foolish, trivial, or baseless. *Accord Clay*, 501 F.3d at 715. Instead, Plaintiff alleges that Defendant increased its scrutiny of his actions so that Defendant could discover a reason to terminate him. Thus, this case is distinguishable from the "honest belief" cases cited in Defendant's brief. *See, e.g.*, *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 728 (6th Cir. 2008) ("honest belief" rule would apply where the employer honestly believed the employee violated the company's privacy policy, even if the decision ultimately proved to be flawed); *Campbell v. Washington Cnty. Public Library*, 241 F. App'x 271, 276 (6th Cir. 2007) (even if employer was mistaken in believing employee was insubordinate, there was no pretext because of "honest belief" rule); *Hairston v. AK Steel Corp.*, 162 F. App'x 505, 510 (6th Cir. 2006) (although another employee may have been responsible for the job duty that the plaintiff failed to undertake, the plaintiff's termination was not pretext because of employer's honest belief); *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (rule applied where employee claimed that the employer's reason for termination was false because he did not delete the payroll wrap).

In other words, Plaintiff is not necessarily alleging that the reason he was terminated was mistaken or baseless, but rather that Defendant's stated reason was not the actual reason for his

termination.  Further, even if the "honest belief" rule applied, the Court believes Plaintiff's allegations of heightened scrutiny present sufficient rebuttal evidence to demonstrate that Defendant did not have an honest belief in its proffered reason for his discharge.  *See Smith*, 155 F.3d at 807 (after an employer points to particularized facts to support its honest belief, the employee has the opportunity to present evidence to the contrary).

This Court is bound by the Sixth Circuit's ruling reversing this Court's prior opinion and holding that summary judgment should not have been granted.  The new evidence presented to the Court in Defendant's renewed motion for summary judgment fails to rebut Plaintiff's allegations of temporal proximity and heightened scrutiny.  In addition, a genuine dispute remains as to the material facts of the events of August 9, 2005.  Although it is clear that Plaintiff's disciplinary history is more extensive that previously thought, this history does not necessarily refute Plaintiff's allegations of actions taken by Defendant after Plaintiff filed his EEOC complaint.  No one disputes that Plaintiff was under scrutiny prior to filing his complaint.  The true issue is whether such scrutiny increased after the complaint was filed.  Accordingly, summary judgment is denied and this matter should be set for trial.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Renewed Motion for Summary Judgment is DENIED.

A telephonic scheduling conference is SET for **April 14, 2011,** at **10:00 a.m. ET.**  The Court will place the call to Plaintiff and counsel.

cc: counsel

        Jarrett Hamilton
        6408 South Third Street
        Louisville, KY 40214